FILED
3/17/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
ER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEITH DOUGLAS FREEMAN | No. 24 CR 191<br><br>Judge John F. Kness |

# PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant KEITH DOUGLAS FREEMAN, and his attorney, JOSHUA G. HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2. The superseding information in this case charges defendant with devising a scheme to commit bankruptcy fraud, in violation of Title 18, United States Code, Section 157(2) (Count One), and filing a false tax return, in violation of Title 26, United States Code, Section 7206(1) (Count Two).

3. Defendant has read the charges against him contained in the superseding information, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding information: Count One, which charges defendant with devising a scheme to defraud, and for the purpose of executing and concealing the scheme and attempting to do so, filing a document in a proceeding under Title 11 of the United States Code, in violation of Title 18, United States Code, Section 157(2); and Count Two, which charges defendant with filing a false tax return, in violation of Title 26, United States Code, Section 7206(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

**a. With respect to Count One of the superseding information:**

On or about January 3, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, defendant KEITH DOUGLAS FREEMAN, for the purpose of executing and concealing a scheme to defraud and attempting to do so, filed and caused to be filed a document, namely, Schedules and a Statement of Financial Affairs in a proceeding under Title 11 of the United States Code, namely, a Chapter 7 bankruptcy case, *In re Keith Douglas Freeman,* No. 24-00059, in the United States

Bankruptcy Court for the Northern District of Illinois, in violation of Title 18, United States Code, Section 157(2).

Specifically, at times relevant to the scheme, FREEMAN was employed as the Village Administrator of the Village of Dolton, the Municipality Manager of Thorton Township, and the Village Administrator of the Village of Robbins, and received consulting fees from a business ("Company A") that financed the lease/purchase of firefighting and other equipment by municipalities and governmental organizations. FREEMAN also was the sole owner of Government Staffing Advisors, Inc. ("GSA"), which he incorporated on or about July 12, 2023, and an owner of Keith Freeman, LLC, doing business as Doodadz Novelty Store.

Beginning in or around July 2023, and continuing until in or around April 2024, at Chicago and Orland Park, in the Northern District of Illinois, Eastern Division, and elsewhere, FREEMAN devised and intended to devise a scheme to defraud, and for the purpose of executing and concealing the scheme and attempting to do so, filed and caused to be filed documents in a bankruptcy case under Title 11 of the United States Code, and made materially false and fraudulent representations concerning and in relation to that case, as set forth below.

It was part of the scheme that, for purposes of fraudulently staying debt collection actions and fraudulently obtaining a discharge of his debts, FREEMAN attempted to and did defraud his creditors and the Chapter 7 Trustee by taking steps to conceal his assets and sources of income prior to filing a bankruptcy petition, and

filed a bankruptcy petition and made false statements and provided false documents during the course of the bankruptcy case that were designed and intended to: (a) conceal FREEMAN's actual financial circumstances and history; (b) conceal whether FREEMAN had disclosed assets consistent with his income; (c) fraudulently prevent creditors and the Chapter 7 Trustee from determining whether FREEMAN had properly filed for Chapter 7 bankruptcy protection; and (d) fraudulently prevent creditors and the Chapter 7 Trustee from objecting to the discharge of FREEMAN's debts or moving to dismiss the bankruptcy case.

On or about January 3, 2024, FREEMAN filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois, thereby initiating a Chapter 7 bankruptcy case captioned *In re Keith Douglas Freeman*, No. 24-00059 (the "Freeman Bankruptcy Case"). The same day, FREEMAN filed in the Freeman Bankruptcy Case his Schedules and a Statement of Financial Affairs, signed under penalty of perjury, which contained materially false statements, including but not limited to the following examples:

(1) FREEMAN filed a Schedule A/B that was false and fraudulent in that, in response to question 17, Deposits of Money, which required FREEMAN to identify financial accounts, FREEMAN falsely represented the amount he had on deposit and that he only had a single checking account at Bank of Montreal, when, in truth, FREEMAN knew that he was then using a bank account at Coastal Community Bank in the name of GSA (the "Coastal Community Account") as a personal account,

including depositing money into that account that he had earned as Municipality Manager of Thornton Township;

(2) FREEMAN filed a Schedule E/F disclosing total unsecured debts of $174,763 owed to approximately 18 creditors that was false and fraudulent in that FREEMAN, knowing that the Village of Robbins had a claim against FREEMAN for unauthorized payments, did not list the Village of Robbins as an unsecured creditor, which deprived the Village of Robbins of notice and the opportunity to timely participate in the Freeman Bankruptcy Case;

(3) FREEMAN filed a Schedule I that was false and fraudulent in that FREEMAN falsely represented that: (i) his only employment was as the Municipality Manager of Thornton Township, when he knew that he was also the Village Administrator of the Village of Dolton at that time; and (ii) his monthly income was approximately $7,167, when he knew that his monthly income as Municipality Manager of Thorton Township and the Village Administrator of the Village of Dolton was approximately $15,000;

(4) FREEMAN filed a Schedule J that was false and fraudulent in that FREEMAN falsely represented that his net monthly income was $94.72, when he knew that his net monthly income was substantially in excess of that amount; and

(5) FREEMAN filed a Statement of Financial Affairs that was false and fraudulent in that FREEMAN falsely represented that: (i) his gross income was $45,186 in calendar year 2022, when he knew that his gross income from his

employment as Municipality Manager of Thornton Township and Village Administrator of the Village of Dolton, combined with consulting fees from Company A, was approximately $140,000; (ii) his gross income was $99,647 in calendar year 2023, when he knew that his gross income from his employment as Municipality Manager of Thornton Township and Village Administrator of the Village of Dolton was approximately $195,000; and (iii) the only business that he owned was Keith Freeman LLC, when FREEMAN knew that he also owned GSA.

On or about January 30, 2024, FREEMAN also caused to be submitted to the Chapter 7 Trustee a purported copy of his 2022 Individual Income Tax Return (Form 1040), signed under penalty of perjury, when in truth, FREEMAN knew that he had not filed a 2022 Individual Income Tax Return with the Internal Revenue Service (the "IRS"). FREEMAN further acknowledges that the 2022 Form 1040 individual income tax return that he provided to the Chapter 7 Trustee falsely represented that FREEMAN's total income from employment was $45,186, when FREEMAN knew that his income from employment in 2022 substantially exceeded that amount.

FREEMAN also admits that, on or about January 30, 2024, while testifying under oath concerning his financial affairs at a meeting of his creditors (known as a "341 Meeting"), FREEMAN falsely represented that he was not a paid employee of the Village of Dolton, when in fact, he was a paid employee of the Village of Dolton at that time. Furthermore, on or about February 23, 2024, about four days before his next scheduled 341 Meeting, FREEMAN caused his pay from the Village of Dolton to

be directly deposited into the Coastal Community Account to conceal that pay from his creditors and the Chapter 7 Trustee.

**b. With respect to Count Two of the superseding information:**

On or about May 31, 2021, at Hazel Crest, in the Northern District of Illinois, Eastern Division, FREEMAN willfully made and subscribed a United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2020, which return was verified by written declaration that it was made under penalties of perjury and was filed with the IRS, which return defendant did not believe to be true and correct as to every material matter, in that said return reported on Line 9 that FREEMAN's total income was $50,347, when FREEMAN knew that his total income was in excess of the amount reported on the return, in violation of Title 26, United States Code, Section 7206(1).

Specifically, on or about May 31, 2021, FREEMAN, a resident of the Northern District of Illinois, prepared, signed under penalty of perjury, and filed with the IRS, a materially false and fraudulent United States Individual Income Tax Return (Form 1040 with schedules and attachments) for calendar year 2020. In the return, FREEMAN willfully underreported the income that he had received in calendar year 2020, reporting only $50,347 in total income on Line 9 of that return, when FREEMAN knew at the time of filing the return that he had received additional income of at least approximately $254,543 from other sources, namely, $79,743 from the Village of Robbins, and $174,800 in Economic Injury Disaster Loan ("EIDL")

proceeds that FREEMAN fraudulently obtained and to which he was not entitled, as set forth in more detail below. FREEMAN's willful failure to report to the IRS all income that he received in calendar year 2020 resulted in a loss to the IRS of approximately $82,077 and a loss to the Illinois Department of Revenue of approximately $12,321.

In addition, FREEMAN prepared, signed under penalty of perjury, and filed with the IRS, a tax return for calendar year 2019 that FREEMAN knew was false, in that FREEMAN's 2019 Individual Income Tax Return underreported his income and caused losses of approximately $24,346 to the IRS and approximately $4,257 to the Illinois Department of Revenue.

FREEMAN further admits that:

(1) in calendar year 2021, he had taxable income of approximately $222,369, but failed to file a tax return for that year, resulting in tax due and owing to the IRS of approximately $74,542;

(2) in calendar year 2022, he had taxable income of approximately $122,703, but failed to file a tax return for that year, resulting in tax due and owing to the IRS of approximately $36,698; and

(3) in calendar year 2023, he had taxable income of approximately $219,924, but failed to file a tax return for that year, resulting in tax due and owing to the IRS of approximately $63,337.

FREEMAN further admits that, in calendar year 2023, he incorporated GSA for the purpose of creating a business entity that would receive his income, including from Thornton Township. FREEMAN admits that GSA served no legitimate business purpose, but instead he used it to conceal from the IRS income he had earned as Municipality Manager of Thornton Township. FREEMAN caused money he earned as Municipality Manager of Thornton Township to be deposited in the Coastal Community Account.

FREEMAN acknowledges that his willful failure to correctly report his income on tax returns for calendar years 2019 and 2020 and his willful failure to timely file tax returns for calendar years 2021 through 2023, in total, resulted in tax due and owing to the IRS of approximately $281,000, and tax due and owing to the Illinois Department of Revenue of at least approximately $16,578.

7. Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

Beginning on or about June 24, 2020, and continuing through on or about March 9, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere, FREEMAN knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the U.S. Small Business Administration ("SBA") in connection with applications for EIDL funds by means of materially false and fraudulent pretenses, representations, and promises, and on or about March 9, 2021, for the purpose of executing the scheme, FREEMAN knowingly

caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transmission of approximately $79,900 from the SBA to a bank account controlled by FREEMAN at Bank A, which funds represented proceeds from the EIDL program that FREEMAN received based on his submission of a false and fraudulent EIDL application, in violation of Title 18, United States Code, Section 1343.

Specifically, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed in part to provide emergency financial assistance to small businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. One source of relief provided by the CARES Act was the expansion of the EIDL program, which provided loan assistance for businesses with, among other things, 500 or fewer employees and other eligible entities.

To gain access to funds through the EIDL program, small businesses applied through the SBA via an online portal and application. The SBA required applicants to submit truthful information about the applying entity, its owner, and its condition prior to the COVID-19 pandemic, including the entity's number of employees as of January 31, 2020, the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020, the entity's type of business, and the date on which the current owner assumed ownership of the entity. Applicants who received EIDL proceeds were required to use those proceeds to pay an array of working capital and

normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments. FREEMAN acknowledges that information about the EIDL applicant's business expenses and employees, and how the EIDL funds would be used, was material to the SBA's approval, terms, and funding of EIDL loans.

As part of the scheme, between approximately June 2020 and February 2021, FREEMAN, for the purpose of fraudulently obtaining EIDL funds, submitted and caused to be submitted three fraudulent applications and supporting documents to the SBA on behalf of companies with which he was associated (e.g., Colab Leaders, Inc. and Heirs 2 Heaven). The applications and supporting documents contained materially false representations concerning, among other things, the existence and nature of the purported businesses, and their number of employees, gross income, and payroll expenses, so that the businesses would falsely appear eligible to receive EIDL funds.

FREEMAN acknowledges that each of the three applications contained false information regarding, among other things, the number of employees the companies had, the gross revenue of the companies, and/or how the companies would use the EIDL funds. FREEMAN further acknowledges that, relying on the fraudulent information contained in his EIDL applications dated approximately June 24, 2020 (Application 1), July 20, 2020 (Application 2), and February 26, 2021 (Application 3), the SBA approved the applications and deposited into bank accounts that FREEMAN

controlled a total of approximately $254,700 in EIDL proceeds to which he was not entitled and which funds FREEMAN used for his own personal benefit.

8. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

9. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that, with respect to Count One, the judge also may impose a term of supervised release of not more than three years.

b. Count Two carries a maximum sentence of 3 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that, with respect to Count Two, the judge also may impose a term of supervised release of not more than one year.

c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

d. The Court also may order restitution to any victims of Count One and Count Two as a condition of supervised release, or otherwise to any victims as agreed by the parties pursuant to this plea agreement.

e. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 8 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, mandatory costs of prosecution, a period of supervised release of up to four years, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

10. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 1, 2025 Guidelines Manual.

b. **Offense Level Calculations.**

**<u>Count One, Relevant Conduct, and the Stipulated Offense (Group One)</u>**

i. Pursuant to Guideline § 3D1.2(d), Count One and the Stipulated Offense group.

ii. The base offense level is 6, pursuant to Guideline § 2B1.1(a)(2).

iii. The offense level is increased by 12 levels, pursuant to Guideline § 2B1.1(b)(1)(G), because the total loss, as measured by the sum of the amount of debt sought to be discharged ($174,763) and the amount of fraudulently obtained EIDL proceeds ($254,700), exceeded $250,000 but was less than $550,000.

iv. The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(2)(A), because the offense of conviction and stipulated offense involved 10 or more victims.

v. The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(9)(B), because the offense of conviction involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding.

**Count Two and Relevant Conduct (Group Two)**

vi. The base offense level is 18, pursuant to Guidelines §§ 2T1.1(a)(1) and 2T4.1(G), because the total federal and state tax loss ($297,578) is more than $250,000 but less than $550,000.

vii. The offense level is increased by 2 levels, pursuant to Guideline § 2T1.1(b)(1), because defendant failed to report income exceeding $10,000 in any year from criminal activity.

viii. The offense level is increased by 2 levels, pursuant to Guideline § 2T1.1(b)(2), because the offense involved sophisticated means.

**Grouping**

ix. Pursuant to Guideline § 3D1.2, Groups One and Two each form a separate group. Pursuant to Guideline § 3D1.4, Group One, which has an offense level of 22, is one Unit, and Group Two, which has an offense level of 22, is also one Unit because the offense level for Group Two is 1 to 4 levels less serious than

the offense level for Group One. With the total number of units as two, 2 levels are added to the group with the highest offense level (Group One), for a total offense level of 24.

x. The government understands that defendant will truthfully admit the conduct comprising the offenses of conviction, and truthfully admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

xii. Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guideline § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I:

i. On or about January 31, 2003, defendant was convicted of theft (4th degree) in the District Court of Johnson County, Iowa, and sentenced to one year of probation. Pursuant to Guideline § 4A1.2(e), defendant receives zero criminal history points for this sentence.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

12. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in either parties' position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections,

and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Cooperation**

13. Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

**Agreements Relating to Sentencing**

14. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court. Defendant further understands that the government reserves the right to make whatever recommendation it deems appropriate regarding the extent of any downward departure. Defendant shall be free to recommend any sentence.

15. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

17. Regarding restitution, defendant agrees to pay restitution, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664, to (a) the United States Treasury, arising from the offense conduct and relevant conduct set forth above in Count Two, in the amount of $281,000, (b) the Illinois Department of Revenue, arising from the offense conduct and relevant conduct set forth above in Count Two, in the amount of at least $16,578, and (c) the U.S. Small Business Administration, arising from the conduct set forth above in the Stipulated Offense, in the amount of $254,700.

18. Defendant understands that the amount of tax loss as calculated by the IRS or the Illinois Department of Revenue may exceed the amount of tax due as calculated for restitution in the criminal case.

19. Defendant understands that the IRS will use the restitution order as a basis for civil assessment pursuant to Title 26, United States Code, Section 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C).

20. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

21. Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve his civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise defendant's obligation to pay any remaining civil tax liability. Defendant authorizes

release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

22. Defendant agrees to pay the special assessments of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

23. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court.

24. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

25. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 24 CR 191.

26. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other

person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

27. Defendant understands that nothing in this Agreement shall limit the IRS in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

**Waiver of Rights**

28. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the superseding information, the information process, or the fact that he has been prosecuted by way of information.

b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses, and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c. **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction,

any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

29. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

30. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as

applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

31. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

32. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's

sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

33. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

34. Regarding matters relating to the IRS, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS): Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

35. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents,

testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the IRS), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

36. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

37. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

38. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

39. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

40. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

41. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 3/17/2026

Andrew Boutros (by RMR)
ANDREW S. BOUTROS
United States Attorney

KEITH DOUGLAS FREEMAN
Defendant

PRASHANT KOLLURI
HAYLEY ALTABEF
Assistant United States Attorneys

JOSHUA G. HERMAN
Attorney for Defendant